IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANDREW J. REVILLA, | ) |
| Petitioner, | ) ) ) |
| v. | ) ) Case No. CIV-22-658-SLP |
| RICK WHITTEN, WARDEN, | ) ) |
| Respondent. | ) ) |

**O R D E R**

Petitioner, Andrew J. Revilla, a state prisoner appearing with counsel, filed this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), this matter was referred for initial proceedings to United States Magistrate Judge Amanda Maxfield Green. The Magistrate Judge issued a Report and Recommendation (R&R) [Doc. No. 13] conditionally granting habeas relief. The Magistrate Judge's finding is narrow, limited to Petitioner's claim of improper vouching of the victim's testimony by the prosecutor. Respondent timely filed an Objection [Doc. No. 14] to the R&R. Thus, the Court must make a de novo determination of the Magistrate Judge's findings and may accept, reject, or modify the recommended decision, in whole or in part. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).[1]

Also before the Court is Petitioner's Motion for Release on Bond [Doc. No. 15]. Petitioner seeks release on bond pending determination of his § 2254 petition. Petitioner bases his request for release on the Magistrate Judge's recommendation that habeas relief

---

[1] Petitioner did not file a response to Respondent's objection. *See* Fed. R. Civ. P. 72(b)(2) (permitting a party to respond to another party's objections within 14 days).

be conditionally granted. For the reasons that follow, the Court declines to adopt the R&R, and instead finds habeas relief is not warranted on the prosecutorial misconduct claim alleging improper vouching of the victim's testimony. Therefore, Petition's Motion for Release on Bond is denied.

I. **Background**

Petitioner challenges the constitutionality of his state court conviction and sentence for two counts of Lewd Molestation of a Minor and one count of Forcible Sodomy, Case No. CF-2017-62, District Court of Jackson County, State of Oklahoma. The state district court sentenced Petitioner to twenty years' imprisonment on each count, and ordered the sentences to be served consecutively.

As more fully set forth by the Magistrate Judge, *see* R&R at 1-4, Petitioner's conviction arose from the alleged sexual abuse of C.D., a minor. In approximately April 2015, eight-year-old C.D. began living in a foster home with her biological aunt and uncle. The sexual abuse occurred during the following year. In November 2016, C.D. was adopted and thereafter told her adoptive mother about Petitioner's alleged sexual abuse of her while C.D. was in the foster home. Petitioner is the adult son of the foster-care parents and the cousin of C.D. C.D. also told her adoptive mother that Petitioner's girlfriend, Stephanie Garcia, participated in the sexual abuse. *Id*. Ms. Garcia was charged and tried as a co-defendant and also convicted on charges arising from C.D.'s allegations of sexual abuse.[2]

---

[2] *See Revilla v. State*, 456 P.3d 609, 612 (Okla. Crim. App. 2019) (reciting procedural history and factual background).

Petitioner brings five grounds for federal habeas relief. *See* Pet. [Doc. No. 1]. The Magistrate Judge recommended that the Petition be conditionally granted, addressing only Petitioner's first ground for relief – prosecutorial misconduct. *See* Pet. at 25-27.[3] The Magistrate Judge focused on that aspect of Ground One in which Petitioner claims that the Prosecutor "Vouched for the Veracity of the Complaining Witnesses." *Id*.[4]

This claim was raised on direct appeal of Petitioner's conviction and it was rejected by the Oklahoma Court of Criminal Appeals (OCCA). *See Revilla*, 456 P.3d at 614-15; *see also* OCCA Order [Doc. No. 10-4]. Pursuant to 28 U.S.C. § 2254(d)(2), the Magistrate Judge found that although "the OCCA identified the correct governing legal principle applicable to claims of prosecutorial misconduct" the OCCA "unreasonably applied that principle to the facts of Petitioner's case." *See* R&R at 16; *see also id*. ("It was objectively unreasonable for the OCCA to find that Petitioner was not deprived of a fair trial through the prosecutor's improper vouching.").

Respondent objects to this finding. Respondent argues that no clearly established federal law holds that vouching violates the Due Process clause. Therefore, Respondent argues Petitioner's claim of prosecutorial misconduct based on vouching must be denied on this basis alone. *See* 28 U.S.C. § 2254(d)(1). Further, Respondent argues that Petitioner has not met the "high hurdle" to establish that the prosecutor's alleged

---

[3] Citations to the parties' briefing submissions, the R&R and the State Court Record reference the Court's ECF pagination.

[4] The Magistrate Judge acknowledged that Petitioner raised other instances of prosecutorial misconduct but found those instances need not be addressed "in light of the recommendation for habeas relief due to improper vouching." R&R at 7, n. 2.

3

impermissible vouching rendered the trial fundamentally unfair and, therefore, a denial of due process.

For the reasons that follow, the Court agrees that no clearly established federal law establishes that impermissible vouching violates a defendant's constitutional rights. The Court further finds that the alleged instances of prosecutorial misconduct based on impermissible vouching did not render Petitioner's trial fundamentally unfair. Because the Magistrate Judge did not address any cumulative effect of prosecutorial misconduct, the Court's analysis is confined to the instances of prosecutorial misconduct based on alleged impermissible vouching.

## II.     Governing Standard

"The review of a § 2254 petition from a state prisoner is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")." *Tryon v. Quick*, 81 F.4th 1110, 1140 (10th Cir. 2023) (internal quotation marks and citation omitted). The threshold question under the AEDPA is whether the petitioner's claim is based on clearly established federal law and that inquiry "focus[es] exclusively on Supreme Court decisions." *Id*. (citation omitted) "The absence of clearly established federal law is dispositive under § 2254(d)(1) and results in the denial of habeas relief." *Grant v. Royal*, 886 F.3d 874, 889 (10th Cir. 2018) (internal quotation marks and citation omitted)).

If, however, there is clearly established federal law governing the petitioner's claim and the state court has adjudicated that claim on the merits, the court proceeds to examine whether the state-court decision was (1) contrary to, or involved an

unreasonable application of, clearly established Federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1), (2).

"A state-court decision is 'contrary to' clearly established federal law if (1) the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or (2) the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from the result reached by the Supreme Court." *Tryon*, 81 F.4th at 1140 (cleaned up). "A state court decision involves an 'unreasonable application' of clearly established federal law if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the petitioner's case." *Id*. (cleaned up). "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. (emphasis in original). A state court's application of federal law is unreasonable "only if *every* fairminded jurist would reach a different conclusion." *Id*. (emphasis in original; cleaned up). Thus, "a § 2254 petitioner must demonstrate that the state court's rejection of his claim 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Under § 2254(d)(2), a state court's factual findings are not unreasonable merely because on federal habeas review the court "would have reached a different result in the first instance." *Johnson v. Martin*, 3 F.4th 1210, 1218 (10th Cir. 2021) (citation omitted).

Instead, the court defers to the state court's factual determinations "so long as reasonable minds reviewing the record might disagree about the finding in question." *Id*. (citation omitted). In keeping with this deference, the court presumes that the state court's factual findings are correct and the petitioner must rebut that presumption by clear and convincing evidence. *Id*. "If the petitioner can show that the state courts plainly misapprehended or misstated the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Id*. at 1219 (citations and internal quotation marks omitted).

### III. Discussion

#### A. State Court Proceedings

As set forth, Petitioner raised a claim of prosecutorial misconduct on direct appeal to the Oklahoma Court of Criminal Appeals (OCCA). Petitioner's habeas claim is based on the same statements as those relied upon in making this claim on direct appeal.

As pertinent to alleged impermissible vouching, Petitioner points to six statements made by the prosecutor during closing argument. The Court has bolded each of the statements challenged by Petitioner, but has provided the argument surrounding the statement for additional context.

### **Challenged Statement No. 1 – "It's not made up.  It's true."**

The prosecutor argued:

> Now, the defense is going to try to convince you that C.D.'s a liar. She was – she's always lied to get out of trouble.  Well, kids do lie.  You heard that.  Anybody that's been around kids know kids lie.
> And kids lie to get out of trouble.  But you also heard kids don't normally lie about big things.  And here's why C.D. isn't lying.  First of all, C.D. wasn't in trouble.  She just wasn't.
> She was in this new home where she had love and structure and safety.  She wasn't in trouble.  Stephanie Danelz knew that her behavior was not normal.  She wasn't in trouble.  It's, "what can we do to help her now?"  Because something's not right.
> She admitted to what she did to her brother.  And then she disclosed all these things that happened to her.  Because she knew it was time, she was ready to talk about it, and she had somebody that she trusted and loved that she could talk about it to.
> So C.D. let it all out.  And why on earth, six months after the last time that she's been around A.J. Revilla and Stephanie Garcia, would she point the finger at them?
> You heard Sonya Revilla's testimony up here yesterday.  You heard that C.D. loved them.  That they were nice to her, they played games with her, they weren't mean to her.
> Why them?  What could she gain by making this up about them? Absolutely nothing.  **It's not made up.  It's true**.

Tr. Vol. IV at 41-42 (emphasis added).

### **Challenged Statement No. 2 – "A kid can't make this kind of stuff up."**

The prosecutor further argued:

> If she was going to lie about the defendants and what they did to her, why would she not just say they had sex with her?  You know, Ronnie, you heard him ask her about that.  She said "They had sex on me."
> "Well, did they have sex with you?"
> "No, they had sex on me."
> Why?  Why wouldn't she just go ahead [and] say they had sex with her?  That would have been easier to explain.  It's because it's the truth.  **A kid can't make this kind of stuff up.**

7

*Id*. at 46 (emphasis added).

### Challenged Statement No. 3 – "She's telling the truth about it."

The prosecutor next argued:

> Ladies and gentlemen, I have a little more time here in [a] moment but for now **I would just submit to you that C.D.'s truth is stranger than fiction but it's the truth. It happened to her. She lived it. And she's telling the truth about it**.

*Id*. at 49-50 (emphasis added).

### Challenged Statement No. 4 – "C.D. didn't lie."

In rebuttal, the prosecutor argued:

> She told her mom, Stephanie Danelz about it. It's because it happened. It was all part of the same deal. They were naked every single time she discussed them. When she told her story, they're all naked all the time.
> The defense still wants to stress that she was lying. Well, ladies and gentleman, I'd stress to you she's not. **She didn't lie. She's not lying. She didn't lie yesterday. She's never lied one time**.

*Id*. at 71 (emphasis added).

### Challenged Statement No. 5 – "C.D. told the truth."

Also in rebuttal, the prosecutor argued:

> Talked about C.D.'s medical records, about her U-T-I. No one's ever said that that U-T-I was caused from any kind of sexual abuse. The doctor testified. It could have been hygiene. Little girls have those problems all time.
> Same way with vaginitis. It could have been hygiene. We don't know. But doesn't mean that this didn't happen. **C.D. told the truth**.

*Id*. at 77 (emphasis added).

8

**Challenged Statement No. 6 – "She's not sophisticated enough to make this up**."

The final prosecutor's comment challenged by Petitioner was also made during rebuttal:

> She's had to talk about this way more than she ever wanted to by now.  She has no reason to put her herself through this experience.  **She's not sophisticated enough to make this up**.  This is pretty complex.  Those drawings, those are complex.  The dolls, all those sex acts, kids can't make that up.

*Id*. at 78 (emphasis added).

Because Petitioner did not object to the challenged statements at trial, the OCCA reviewed the statements for "plain error," that is, Petitioner was required to show the alleged prosecutorial misconduct "so infected the trial as to render it fundamentally unfair."  *See* OCCA Summary Op. [Doc. No. 10-4] at 9.[5]  With respect to the challenged statements identified above, the OCCA found: "[t]he prosecutor did not personally vouch for the victim's credibility by saying that her allegations had the ring of truth."  *Id*. at 10 (citing *Pickens v. State*, 2001 OK CR 3, ¶ 42, 19 P.3d 866, 880).   The OCCA further

---

[5] The Tenth Circuit has found "no practical distinction" between the formulations of plain error used by the OCCA and the federal due-process test, requiring reversal when an error "so infused the trial with unfairness as to deny due process of law." *Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005); *see also Hancock v. Trammell*, 798 F.3d 1002, 1011 (10th Cir. 2015) ("Oklahoma's formulation of the plain-error standard is virtually identical to the constitutional test for due process."). Accordingly, the Court defers to the OCCA's ruling and applies AEDPA deference under 28 U.S.C. § 2254(d).

found "[t]he cumulative effect of the prosecutor's questions and comments did not deny the Appellant a fair trial." *Id*. at 10.[6]

## B. Clearly Established Law – Improper Vouching by the Prosecutor

When identifying clearly established federal law, the court must construe the holdings of the Supreme Court "narrowly" and must not "extract clearly established law from the general legal principles developed in factually distinct contexts." *Meek v. Martin*, 74 F.4th 1223, 1251 (10th Cir. 2023) (internal quotation marks and citations omitted). The absence of "on-point holdings" is dispositive and "closes the door on a petitioner's claim." *Id*.

In the R&R, the Magistrate Judge properly acknowledged that "the Supreme Court has never held that witness 'vouching testimony itself violates the Due Process Clause.'" *Id*. at 10 (*citing Parker v. Scott*, 394 F.3d 1302, 1310 (10th Cir. 2005)).[7] But the Magistrate Judge then concluded that "[t]he prosecutor's statements, taken in context, show improper vouching for the witness." *Id*. at 12. The Magistrate Judge applied

---

[6] In reaching this conclusion, the OCCA considered additional instances of alleged prosecutorial misconduct. *See id*. at 9-10. As previously set forth, the Magistrate Judge did not consider any of these additional alleged instances.

[7] In *Parker*, the Tenth Circuit addressed a habeas petitioner's claim that the state court had improperly allowed three witnesses to "shore up" the testimony of a child victim by vouching for her credibility as to whether sexual abuse occurred. The Tenth Circuit noted that the cases the petitioner relied upon to support the vouching claim only held that it was "error under federal and state evidentiary rules to permit an expert in a sex abuse case to vouch for the victim's credibility" and that the petitioner could not rely on "Tenth Circuit cases and other non-Supreme Court authority to show that the OCCA's decision was an unreasonable application of federal law" under the AEDPA. *Id*. at 1310. The Tenth Circuit further analyzed "under general due process standards" whether the challenged testimony violated the petitioner's constitutional rights as the petitioner had raised a claim on that basis as well. *Id*. at 1310-11 (citing *Lisenba v. California*, 314 U.S. 219, 236 (1941); *Romano v. Oklahoma*, 512 U.S. 1, 12 (1994); *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)).

§ 2254(d)(2) and found: "[n]o reasonable jurist would find the prosecutor's statements to simply suggest that C.D.'s testimony has the 'ring of truth;' rather, the statements explicitly express the prosecutor's personal opinion and assure the jury of C.D.'s truthfulness and even her inability to fabricate her testimony or lie." *Id*. Ultimately, the Magistrate Judge concluded as follows:

> [T]he OCCA identified the correct governing legal principle applicable to claims of prosecutorial misconduct – whether Petitioner's trial was rendered fundamentally unfair, *Matthews [v. Workman]*, 577 F.3d [1175,] 1186 [10th Cir. 2009] (citing *Donnelly*, 416 U.S. at 643) – but unreasonably applied that principle to the facts of Petitioner's case. It was objectively unreasonable for the OCCA to find Petitioner was not deprived of a fair trial *through the prosecutor's improper vouching*. Because the OCCA unreasonably applied Supreme Court law, the court should conditionally grant Petitioner's request for a writ of habeas corpus.

*Id*. at 16 (emphasis added).

To the extent the Magistrate Judge concluded that improper vouching resulted in a violation of Petitioner's due process rights, the Court agrees with Respondent that this is an improper basis upon which to conditionally grant habeas relief. Such a conclusion is at odds with the Magistrate Judge's express acknowledgment that no on-point holding of the Supreme Court establishes that vouching testimony itself violates a defendant's constitutional rights. The lack of such clearly established federal law "closes the door" on Petitioner's habeas claim based on improper vouching by the prosecutor. *Meek*, 74 F.4th at 1251.

To this end, Petitioner, who is represented by counsel, identifies no clearly established federal law in his Petition that would support a finding that improper

vouching by the prosecutor violates the Due Process Clause. *See Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015) ("It is the petitioner's burden to make this showing and it is a burden intentionally designed to be 'difficult to meet.'" (quoting *Cullen v. Pinholster*, 563 U.S. 170 (2011)).[8]  And, in a recent unpublished decision, the Tenth Circuit has underscored that no such clearly established Supreme Court law exists. *Compare O'Bryant v. Nunn*, No. 22-6098, 2022 WL 17724698 at *7 (10th Cir. Dec. 16, 2002) (rejecting § 2254 petitioner's claim of prosecutorial misconduct based on improper vouching where petitioner "point[ed] to no Supreme Court case clearly establishing that vouching testimony violates the Due Process Clause or renders a trial fundamentally unfair" and circuit authority about the impermissibility of vouching testimony "cannot substitute for a Supreme Court case on point").[9]  Therefore, the Court finds that Petitioner is not entitled to habeas relief based on this claim.

---

[8] The only case cited by Petitioner that addresses vouching is *United States v. Young*, 470 U.S. 1 (1985).  But in *Young*, the Supreme Court reviewed a federal trial for the presence of plain error.  The Court did not apply the Constitution to adjudicate the issues before it.  The Court did not cite the Due Process Clause or any of its cases decided thereunder.  Indeed *Young* supports a finding that improper vouching for witness credibility does not, itself, violate due process. *Id*. at 11 ("Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding."); *see also Donnelly*, 416 U.S. at 645 (where a prosecutor makes improper comments courts must consider the record as a whole and determine whether they made the defendant's trial "so fundamentally unfair as to deny him due process").

[9] In *O'Bryant*, the alleged impermissible vouching occurred through testimony of witnesses, not the prosecutor's vouching in closing argument.  But Petitioner likewise points to no Supreme Court case finding the prosecutor's vouching in closing argument violates the Due Process Clause or renders a trial fundamentally unfair. *See Robinson v. Martin*, No. 19-cv-0107 WJ-CDL, 2023 WL 2716591 at *7 (N.D. Okla. Mar. 30, 2023) (citing *O'Bryant* to conclude prosecutor's vouching for witnesses during closing argument did not warrant habeas relief as no clearly established law supported such a claim).

### C. Petitioner's Trial Was Not Rendered Fundamentally Unfair by the Prosecutor's Alleged Improper Vouching Comments Made During Closing

The Tenth Circuit recently reiterated that the clearly established law governing claims of prosecutorial misconduct "at the habeas stage" is "'the narrow one of due process.'" *Andrew v. White*, 62 F.4th 1299, 1337-38 (10th Cir. 2023) (quoting *Donnelly*, 416 U.S. at 642). To establish a constitutional violation, "'[i]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation omitted). Instead, "[t]he relevant question is whether the prosecutors' improper comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*. (quoting *Donnelly,* 416 U.S. at 643). Factors the court may consider to answer this question include: "whether the comments were 'invited by' or 'responsive' to defense arguments; whether curative instructions were given to the jury; and the weight of the evidence." *Andrew*, 62 F.4th at 1338. "Critical" to this analysis, the Supreme Court has noted that "'the *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Andrews*, 62 F.4th at 1338 (quoting *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (additional citations omitted)).

Although the Magistrate Judge cited clearly established federal law to address whether Petitioner's trial was rendered fundamentally unfair, *see* R&R at 7-8, 16, it appears the only finding in support of that conclusion is that the prosecutor engaged in improper vouching. *See, e.g*., R&R at 10 ("The relevant question is what constitutes

13

vouching by the prosecutor?"); *see also id*. at 12 ("The prosecutor's statements, taken in context, show improper vouching."). For the reasons set forth above, the absence of clearly established federal law precludes a finding that habeas relief is warranted on this basis.

Even if the Magistrate Judge's R&R is construed to include a due process finding based on *Darden* and *Donnelly*, the Court respectfully disagrees that Petitioner is entitled to habeas relief.[10]  "Vouching typically 'occurs when the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony.'" *Stillwagon v. Martin*, No. 20-6165, 2021 WL 3826557, at *3 (10th Cir. Aug. 27, 2021) (quoting *Hanson v. Sherrod*, 797 F.3d 810, 837 (10th Cir. 2015) (internal quotation marks omitted). In *Stillwagon*, the petitioner was convicted of committing crimes against two stepdaughters including indecent or lewd acts with a child under the age of 16 and attempted rape. The petitioner argued that during closing argument the prosecutor vouched for the stepdaughter's credibility based on the following:

> And I would submit to you that, if they were going to make up stories, they could have made up a lot better story and that right there tells you they're telling the truth. They are telling the truth. They have been consistent . . . since they were interviewed, since they made their

---

[10] The Court notes that the R&R does not cite any case in which federal habeas relief has been granted based on allegations of prosecutorial misconduct similar to those at issue here. Instead, the R&R is primarily focused on distinguishing the Supreme Court's decision in *Young* and other Tenth Circuit cases concluding prosecutorial misconduct did not result in any violation of a defendant's due process rights. *See* R&R at 13-16.

> disclosure. They have been consistent. They haven't changed what they have said has happened to them.

*Id*., 2021 WL 3826557 at *3. The Tenth Circuit concluded: "the state appellate court could reasonably decline to characterize this argument as vouching, so no reasonable jurist could question the state court's decision under the rigorous test for habeas relief." *Id*. In support of this conclusion, the Tenth Circuit reasoned: "The prosecutor here did not say that she believed that the stepdaughters were telling the truth. She instead argued that their testimony was believable. The state appellate court thus acted reasonably in rejecting Mr. Stillwagon's claim of vouching." *Id*.; *see also Burling v. Addison*, 451 F. App'x 761, 765 (10th Cir. 2011) (finding OCCA's adjudication on the merits of prosecutorial misconduct claim based on improper vouching was "undisputably not contrary to or an unreasonable application of federal law"; statements by the prosecutor that "the jury should believe the victim because she gave her testimony under oath, she did not have incentive to lie, her testimony was supported by the medical evidence, she did not exaggerate, and the 'truth has cost her'" were proper as they did not insinuate they were based on the prosecutor's knowledge or anything other than the testimony of witnesses).

Here, the prosecutor's statements are notably similar to those addressed in *Stillwagon* and *Burling*. The prosecutor did not express personal belief in C.D.'s credibility or awareness of information withheld from the jury. To the contrary, the prosecutor fairly argued that C.D.'s testimony was believable based on the evidence at trial. *See Thornburg*, 422 F.3d at 1132 (concluding that "it is not improper for a

15

prosecutor to direct the jury's attention to evidence that tends to enhance or diminish a witness's credibility"); *see also Hanson*, 797 F.3d at 838 (presenting evidence of a witness's obligation or motivation to testify truthfully is unobjectionable) (citation omitted)).

Moreover, the prosecutor's statements constituted a reasonable response to the defense argued by both Petitioner and his co-defendant. Throughout the trial, defense counsel argued and elicited testimony that C.D. lied, directly challenging her credibility.[11] For instance, in opening, defense counsel stated that C.D.'s story had changed over time, evolving into four different versions and that C.D. had a propensity for lying in the past. Tr. Vol. I at 252-61. Defense counsel explored the inconsistencies in C.D.'s testimony and her ability to recall the events. Tr. Vol. III at 46-55. Defense counsel also elicited testimony that C.D. was in counseling for lying and that she had been known to get in trouble for lying. Tr. Vol. II at 46-47; 52-53, 77, 126-27; Tr. Vol. III at 44, 48, 121, 137, 164-65, 174-75, 258-59). Additionally, defense counsel contrasted C.D.'s testimony at the preliminary hearing – where she had a lack of memory about certain conduct/events that happened to her – and her testimony at trial – where she had a better recall of such conduct/events. Tr. Vol. III at 49-55. And during closing, Petitioner's attorney stated that "what we learned throughout the course of this trial is that C.D. is in fact a liar." Tr. Vol. IV at 51. *See also id*. at 58 ("Ladies and gentleman of the jury, I submit to you today,

---

[11] As the Magistrate Judge noted: "Petitioner's case centered on the truthfulness and reliability of C.D.'s testimony." R&R at 14.

you cannot convict someone based on the testimony from a known liar."); *id*. ("C.D.'s lying raises serious doubt about the integrity of this case.").

On the record presented, the OCCA's decision that the prosecutor's statements did not constitute vouching is reasonable. *See, e.g., Dunlap v. Clements*, 448 F. App'x 820, 825 (10th Cir. 2011) (affirming district court's conclusion that prosecutor's statements during closing did not constitute vouching as prosecution was entitled to rebut defendant's theory that key prosecution witnesses were lying; state court decision was not contrary to or an unreasonable application of federal law under § 2254(d) as "[c]ourt's often distinguish between reasonable responses to defense theories and comments and improper arguments" (citations omitted)). Because no improper vouching occurred, it necessarily follows that Petitioner's trial was not rendered fundamentally unfair.

Alternatively, even if one or more of the statements were considered to be impermissible vouching, Petitioner has not shown that the OCCA's finding that Petitioner's trial was not rendered fundamentally unfair is contrary to or an unreasonable application of clearly established law. "[A] prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parker*, 567 U.S. at 45 (quoting *Darden*, 477 U.S. at 181). The comments the prosecutor made during closing and rebuttal must be viewed in context, considering the trial as a whole. *Darden*, 477 U.S. at 179; *see also Hanson*, 797 F.3d at 843 ("An inquiry into the fundamental fairness of the trial requires

17

an examination of the entire proceedings, including the strength of the evidence against the defendant.").

As set forth, the prosecutor's comments were directed at the credibility of C.D., an issue defense counsel put in play and repeatedly challenged throughout the case. Moreover, the jurors were instructed that they alone were to determine the credibility of witnesses and that the statements or arguments of counsel were not evidence. *See* State Court Record [Doc. No. 12-9] at 101-102 (Opening Instruction) and 122 (Instruction No. 20).[12] Additionally, as in *O'Bryant*, "[t]he jury heard from the child herself and could make its own credibility determinations based on the child's testimony and other testimony corroborating it, including others' testimony about the child's disclosures to them and about their professional experiences with and/or understanding of childhood disclosures of sexual abuse." *Id.*, 2022 WL 17724698 at *7.

The Court has reviewed the entirety of the trial proceedings and based on that review, disagrees with the Magistrate Judge's conclusion that "[i]t was objectively unreasonable for the OCCA to find that Petitioner was not deprived of a fair trial through the prosecutor's improper vouching." R&R at 16. To the contrary, the Court finds the Petitioner has failed to satisfy the substantially high burden of showing the OCCA's decision was not merely incorrect, but unreasonable. *See, e.g., O'Bryant*, 2022 WL 17724698 at *9 ("[T]o determine the OCCA's rejection of the prosecutorial misconduct

---

[12] In his Objection, Respondent interjects argument related to Petitioner's claims raised in Ground Three of the Petition regarding alleged instructional error. *See* Obj. at 8-9. But the Magistrate Judge did not make any findings regarding this instructional error and, therefore, the Court declines to address it at this time.

claim was unreasonable, a jurist would need to view the prosecutor's few isolated comments in closing argument as not just improper but capable of overpowering the jury's ability to make its own credibility determination. In the context of this trial, no reasonable jurist would take that view.").

The record before the Court does not support a conclusion that "*every* fairminded jurist would reach a different conclusion" than that reached by the OCCA. *Tryon*, 81 F.4th at 1140 (emphasis in original, internal quotation marks and citation omitted) ("[A] section 2254 petitioner must demonstrate the state court's rejection of his claim 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Accordingly, the Court declines to conditionally grant the writ of habeas corpus as to Ground One of the Petition based on alleged improper vouching by the prosecutor.

## IV. Conclusion

IT IS THEREFORE ORDERED that the Court DECLINES to ADOPT the Report and Recommendation [Doc. No. 13]. Ground One of the Petition is DENIED as to the claim alleging that the Prosecutor "Vouched for the Veracity of the Complaining Witnesses."

IT IS FURTHER ORDERED that Petitioner's Motion for Release on Bond [Doc. No. 15] is DENIED.

This matter is rereferred to the Magistrate Judge for further proceedings.

IT IS SO ORDERED this 3rd day of January, 2024.

                                                                                                      SCOTT L. PALK
                                                                                                      UNITED STATES DISTRICT JUDGE